UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sarah Ann Elizabeth Ayala,<br><br>  Plaintiff,<br><br>  v.<br><br>Commissioner of Social Security,<br><br>  Defendant. | No. 1:23-cv-00001-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 10, 13)** |

**I.    Introduction**

Plaintiff Sarah Ann Elizabeth Ayala seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.[1]

**II.    Factual and Procedural Background**

On August 7, 2018, Plaintiff applied for supplemental security income alleging disability as of December 2, 2017. The Commissioner denied the claim initially and on reconsideration. AR 169; 188. The ALJ held a hearing on July 28, 2020. AR 91–130. The ALJ issued an unfavorable decision on September 3, 2020. AR 220–47. The Appeals Council remanded the matter for further proceedings[2] on April 30, 2021. AR 248–54. The ALJ held a second hearing on August 23, 2021. AR 54–90. The ALJ issued a second unfavorable decision on October 20, 2021. AR 21–53. The Appeals Council denied review on November 17, 2022 (AR 1-7), and this appeal followed.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 6, 7.
[2] The Appeals Council found the ALJ failed to explain why she rejected the treating source opinion of Dr. Balduzzie limiting Plaintiff to 4 hours of standing/walking. AR 250. However, in the current appeal Plaintiff does not allege any error with respect to her physical impairments. Thus, the Appeals Council's order is not at issue.

### III. <u>The Disability Standard</u>

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the

national and regional level. See, 20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.     The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 7, 2018.  AR 27.  At step two the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis; right shoulder osteoarthritis; sick sinus syndrome; depressive disorder; posttraumatic stress disorder; polysubstance abuse in reported remission; and personality disorder with borderline traits.  AR 28.  The ALJ found that the following impairments were not severe: history of right knee arthroscopy; gastroesophageal reflux disease with mild chronic gastritis; and obesity.  AR 28.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 29–31.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) with physical limitations not at issue, and the following mental limitations: perform detailed tasks in a low stress work environment with as few workplace changes as possible; occasional interaction with the public, supervisors, and co-workers; no tandem or teamwork.  AR 31–42.  At step four, the ALJ concluded that Plaintiff could not perform her past relevant work as a fast-food worker or convenience store clerk due to the RFC restriction on public interaction.  AR 42.  At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: photocopy machine operator, advertising material distributor and collator operator.  AR 44.  The ALJ thus concluded that Plaintiff was not disabled since the application date of August 7, 2018.  AR 44.

### V.     Issues Presented

Plaintiff asserts three claims of error: **1-** the ALJ failed to properly evaluate the treating source opinions; **2-** the ALJ failed to properly evaluate Plaintiff's testimony; and **3-** the ALJ relied

3

on a flawed hypothetical question to the vocational expert by failing to incorporate moderate limitations in concentration, persistence, and pace.

### A. Treating and Examining Source Opinions

#### 1. Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications dated March 27, 2017, or later, the new regulations eliminate a hierarchy of medical opinions. 20 C.F.R. § 404.1520c(a) ("[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Rather, when evaluating any medical opinion, the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how they are considered. *Id.*

#### 2. Analysis

##### a. Dr. Saleem

Plaintiff's psychiatrist, Dr. Saleem, M.D., provided two opinions dated January 6, 2020 and December 20, 2018, which were largely similar in content. AR 1480–86; 1521–27. Dr. Saleem treated Plaintiff since May 2017 for bipolar, PTSD, and anxiety. AR 1523. Dr. Saleem opined that Plaintiff had marked limitations in 16 of 23 work functions under the following categories, with at

least 1 marked limitation in each category: understanding and memory; concentration and persistence; social interaction; and adaptation. *Id.* Dr. Saleem explained psychosocial factors: "she was raped at 12 years old. [illegible] in a physically and emotionally abusive marriage/relationship and got divorced finally.  Then she got a no contact order so she has not seen her [illegible] for more than 6 years."  AR 1523.  Dr. Saleem also: **1**- identified supporting clinical signs and symptoms: depressed mood; persistent generalized anxiety; feelings of guilt/worthlessness; hostility/irritability; suicidal ideation; difficulty concentrating; easy distractibility, poor memory; intrusive recollections of traumatic experience; recurrent panic attacks; vigilance and scanning; anhedonia/pervasive loss of interests; appetite disturbances/weight change; decreased energy; motor tension; psychomotor agitation; pressured speech; social withdrawal/isolation; and sleep disturbance ( AR 1524); **2**- explained the most severe signs and symptoms: "she is not able to sleep well. She gets triggered and then she starts getting flashbacks and nightmares.  She is not able to focus or concentrate.  She is isolated and withdrawn.  If she is in a stressful situation she gets psychogenic seizures (full blown with convulsions)" (AR 1524); **3**- listed Plaintiff's medications: Zoloft, Lamictal, Prazosin, Clonadine, and Klonopin  (AR 1523); and **4**- opined that Plaintiff would miss 3+ days of work monthly, and that Plaintiff's limitations dated back to October 2017.  AR 1527.

The ALJ rejected Dr. Saleem's opinion for several reasons, see below:

<u>First</u>, the ALJ stated that "These opinions, *in theory*, are supported by the provider's treatment records (Exhibits B5F; B11F; B12F; B14F; B20F; B42F; B44F)."  AR 40 (emphasis added).  However, the ALJ's reasoning here is not altogether clear in that the ALJ appears to acknowledge that Dr. Saleem's voluminous treatment records, which cover several years, do support his opinions to some extent. In the absence of more specifics by the ALJ, and by the ALJ's own admission the supportability factor—one of the two most important regulatory factors—leans

in favor of Dr. Saleem's opinions.

Second, the ALJ stated: "However, the doctor's mental status examination findings remained exactly the same throughout all the years of treatment, which is not consistent with the subjective descriptions of waxing and waning symptoms (Exhibits B5F; B11F; B12F; B14F; B20F; B42F; B44F)."  AR 40.  The fact that Dr. Saleem's mental status examinations findings were consistent throughout years of treatment, this would point to another factor in favor of his opinions.  Indeed, the regulations provide that consistency is the second of the two most important factors— the other being supportability.

Moreover, it does not seem to follow that the consistency across Dr. Saleem's examination findings somehow undermines his opinions.  Perhaps though, the ALJ may have expected to see consistency between Dr. Saleems' findings and Plaintiff's reported symptoms given that the ALJ noted that it was only the symptoms that waxed and waned whereas Dr. Saleem's findings did not.  Notwithstanding, the fact that Dr. Saleems' *objective* mental status examination findings (i.e. speech pattern, thought content, judgment, psychomotor agitation, etc) did not wax and wane, is not inconsistent with the fact that the claimant's *subjective* perception of her own symptoms did wax and wane.  The former is objective, how Plaintiff presented to the doctor, and the latter is subjective, how Plaintiff was feeling— hopelessness, fatigue, intrusive thoughts.  It is entirely plausible that Dr. Saleem perceived Plaintiff's objective presentation as unchanged for the duration of their treatment relationship, whereas Plaintiff subjectively felt her symptoms waxed and waned.  The distinction between subjectivity and objectivity in mental health discourse is a subtle one, but it is nonetheless a meaningful distinction.

Further, the ALJ made the opposite point when discussing Dr. Ryser's opinion, which will be discussed more below.  The ALJ criticized Dr. Ryser's opinion because "the opinion appeared to be based primarily on the claimant's reported symptoms rather than objective medical findings."

6

AR 40.  In other words, from what can be reasonably deduced from the ALJ's perspective, Dr. Saleem's opinion was unpersuasive because it was <u>insufficiently</u> consistent with the claimant's subjective symptom reports, while Dr. Ryser's opinion was unpersuasive because it was <u>too</u> consistent with the claimant's subjective symptom reports—so consistent in fact that it appeared Dr. Ryser based her opinion primarily on Plaintiff's reported symptoms.  Thus, the ALJs two theories concerning the consistency factor are significantly in tension.[3]

<u>Third</u>, the ALJ stated "The treatment notes are not consistent with the opinions. For example, the doctor opined that the claimant had symptoms of poor immediate memory, but Dr. Saleem's treatment notes do not indicate any problems with immediate memory (Exhibits B20F/32, B22F/4; B25F/4; B42F/3, 12, 26)." *Id.*

As Plaintiff notes however, Dr. Saleem's other examinations did reveal memory problems, seemingly recent and remote.  A February 16, 2018, examination noted "memory (recent/remote): poor" (AR 859).  That finding was echoed on examination notes dated: March 11, 2018 (AR 858); April 9, 2018 (AR 857); May 7, 2018 (AR 856); and June 4, 2018 (AR 855).

Further, as the ALJ acknowledged elsewhere in the decision, Dr. Ryser's June 22, 2021, examination documented limitations in memory wherein Plaintiff recalled one of three words after five minutes, and two of the three words after further delay.  AR 2419.

The ALJ's observation of a few counterexamples on the subject of memory is not a convincing basis to elevate her layperson functional opinion <u>over that of a treating psychiatrist</u>, Dr. Saleem, <u>nor over that of an examining psychologist,</u> Christine Ryser, PHD.[4]  This is particularly true here where  both doctors' opinions were issued much closer in time to the ALJ's October 20,

---

[3] The latter is the more reasonable of the two theories, *if* it were accurate.  But as discussed more below it is not factually correct that Dr. Ryser based her opinion primarily on Plaintiff's reported symptoms.

[4] *See Miller v. Astrue*, 695 F. Supp. 2d 1042 (C.D. Cal. 2010) (ALJ can't substitute his opinion for a medical doctor's); *Day v. Weinberger*, 522 F.2d 1154 (9th Cir.1975) (same); *Nguyen v. Chater*, 172 F.3d 31 (1st Cir.1999).

2021 decision than the opinion of Dr. Torrez, the consultative examiner who examined Plaintiff on November 4, 2018 and issued an opinion which the ALJ largely adopted.[5]

<u>Fourth</u> and finally, the ALJ explained that "Dr. Saleem's opinion that the claimant had marked limitations in *adaptation* are not consistent with the claimant's own testimony that she could do chores, take walks, and care for her pets (Exhibit B6E; Hearing Testimony). I do not find this opinion persuasive." AR 40 (emphasis added). But this explanation is somewhat in tension with the nature of the functional domain of "adaptation" and the work functions under that domain. Under "adaptation", Dr. Saleem identified marked limitations for 4 work related functions: 1- respond appropriately to <u>workplace changes</u>; 2- be aware of <u>hazards</u> and take appropriate precautions; 3- set realistic goals; and 4- make plans independently. AR 1526 (emphasis added). The third and fourth work functions, setting realistic goals and making plans independently, have some logical connection to the daily activities the ALJ cited—chores, walks, caring for pets—but the first two work functions do not. Chores, walks and caring for pets are relatively mundane repetitive activities that would rarely require adaptation to a changing work environment or awareness of hazards. Thus, Plaintiff's reports that she performs these daily activities does not undermine Dr. Saleem's opinion that Plaintiff is markedly limited in her ability to adapt to workplace changes and to be aware of hazards.

In sum, the ALJ's reasons for discounting Dr. Saleem's opinions are deficient.

### b. **Dr. Ryser**

Psychologist Christina Ryser, PHD, evaluated Plaintiff on one occasion on June 22, 2021. AR 2421–25. She completed the same form as Dr. Saleem and identified marked limitations in 10 of 23 work functions under the same categories Dr. Saleem evaluated with at least 1 marked

---

[5] Importantly, contrary to Plaintiff's contention, ALJ's are not categorically prohibited from independently assessing clinical findings. *See Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

limitation in each category.  AR 2424.

The ALJ rejected the opinion, explaining as follows:

> The opinion is not consistent with the overall evidence of record. For example, it is not consistent with the claimant's mental status examination findings that indicated that she demonstrated dressed appropriately with normal speech, oriented, unremarkable thought content, average intelligence, fair insight and judgment, normal fund of knowledge, and normal memory (Exhibits B47F/9; B49F/4; B50F/7; B52F).  AR 40.

Here, the ALJ did not present a comprehensive view of the cited records, but instead focused only on the normal findings therein.  For example, the first cited record (Ex. B47F/9, AR 2316) documents some normal findings, but also documents abnormalities which the ALJ did not acknowledge, including: talkative; circumstantial thought process; poor impulse control; signs of self-neglect.  *Id.*  Similarly, the second cited record (Ex. B49F/4, AR 2338–39) documents: irritable attitude; severely anxious mood; unable to perform serial 7s, 3s, or spell "world" in reverse, which relate to attention and concentration.  The same findings were mirrored in the third record cited (Ex. 50F/7, AR 2375–76).

Further, Plaintiff identifies counterexamples to many of the findings the ALJ noted.  For example, as to appearance some exams note that she was disheveled (AR 855, 889) and her speech was rapid, elevated or pressured (AR 2316; 2418–19; 2422).  Numerous examples of poor memory were cited above with respect to Dr. Saleem's opinion (AR 855, 856, 857, 858, 859, 2419).

Although it is generally appropriate to affirm the agency's decision where the record can support two different conclusions,[6] that principle applies with less force when the ALJ does not equally demonstrate awareness of normal and abnormal findings alike and then attempts to reconcile the two.  As Plaintiff put it: "mental status examinations are always going to show at least some normal findings unless the claimant is floridly psychotic."  Reply at 2.  Here, the two

---

[6] *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

examining doctors were equally aware of the various mixed clinical findings but nevertheless opined that Plaintiff had extensive marked limitations.

Finally, the ALJ discounted Dr. Ryser's opinion because "the opinion appeared to be based primarily on the claimant's reported symptoms rather than objective medical findings."  AR 40. The fact that Dr. Ryser explained Plaintiff's reported symptoms in detail as a part of her 9-page single-spaced narrative report, does not mean her opinion was primarily based on those symptoms. Dr. Ryser also documented objective mental status examination findings.   For example: with respect to appearance/presentation/speech/language/behavior, Dr. Ryser documented, *inter alia*: tense posture, significant fidgeting, slightly rapid speech and elevated volume  (AR 2418); with respect to immediate and remote memory, Plaintiff recalled only 1 of 3 words after 5 minutes, and only 2 of 3 words after another 5 minutes  (AR 2419);  with respect to concentration, she made 1 error out of only 4 responses with serial 7s, took an inordinate amount of time to do so (*Id.*), and missed 1 of 4 simple math problems despite lengthy pauses and repetition of the questions.  These are all objective findings, not subjective symptoms.

In sum, the ALJ's reasons for discounting Dr. Ryser's opinion were deficient.

### c. **The Agency Consultants' Opinions**

On November 4, 2018, Dr. Torrez conducted a consultative psychological examination of Plaintiff at the request of the agency.  He opined Plaintiff was moderately limited in her ability to interact with co-workers, supervisors, and the public but was otherwise no more than mildly limited. AR 890–91.  The ALJ found the opinion persuasive for reasons largely already covered— that Plaintiff's mental status exams were purportedly normal, which is not a supported viewpoint.

Notably, Dr. Torrez's opinion in November 2018 was nearly 3 years prior to the ALJ's final decision in October 2021.  Drs. Saleem and Ryser, by contrast, issued opinions in January 2020 and June 2021, respectively.   Their opinions would therefore better approximate Plaintiff's

10

functionality at the time the ALJ issued the decision, in additionally throughout the relevant period.

Similarly, the ALJ was persuaded by the opinions of the non-examining state agency psychiatric consultants Drs. Patterson and Murillo, who reviewed the *existing* medical file at the initial and reconsideration levels and opined consistent with Dr. Torrez. AR 41. Importantly however, those opinions were dated November 23, 2018 (AR 160, 165) and February 11, 2019 (AR 179, 183) respectively, which was more than 2.5 years prior to the ALJ's final decision on October 20, 2021.

Of note, the Ninth Circuit has observed that "there is always *some* time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (emphasis added). Claimants routinely continue pursuing medical care during that time and generating new medical records. Thus, an ALJ is often tasked with independently reviewing at least *some* medical evidence that post-dated the agency consultant's review at the initial/reconsideration levels and interpreting their functional significance. That is consistent with the ALJ's role as characterized by the Ninth Circuit. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

However, the gap in time here was unusually long, and the relative percentage of records the ALJ independently reviewed was quite high. Indeed, the RFC was formulated almost entirely based on the ALJ's independent review of the medical evidence, seemingly doing so by elevating her own understanding of the medical evidence over the well-supported and detailed opinions[7] : 1- of Plaintiff's psychiatrist Dr. Saleem, who has medical expertise *and* had a longitudinal view of

---

[7] Which, again, courts have suggested is problematic in certain circumstances. *See Miller v. Astrue*, 695 F. Supp. 2d 1042 (C.D. Cal. 2010) (ALJ can't substitute his opinion for a medical doctor's); *Day v. Weinberger*, 522 F.2d 1154 (9th Cir.1975) (same); *Nguyen v. Chater*, 172 F.3d 31 (1st Cir.1999).

Plaintiff's treatment through January 2020, and 2- of examining psychologist, Dr. Ryser, who in June 2021 conducted the most recent exam of Plaintiff prior to the ALJ's decision. In sum, the ALJ's reasoning for rejecting those opinions is insufficiently supported.

### B. Subjective Statements; Flawed Hypothetical to the VE

Finally, Plaintiff's discussion of her subjective statements breaks very little novel ground not already addressed above. Moreover, Drs. Saleem and Ryser covered her subjective symptoms, objective findings, and functional limitations with much more clarity and detail than Plaintiff did. Thus, additional discussion here of Plaintiff's subjective symptoms is not necessary given that Plaintiff's statements made at the previous hearing and new hearing subject to reconsideration just as are the opinions of Drs. Saleem and Ryser.

Similarly, Plaintiff argues over the course of 2 pages that the ALJ's hypothetical to the VE was flawed in that it failed to incorporate the moderate mental limitations the ALJ herself identified in the area of concentration, persistence, and pace. Yet Plaintiff chiefly advocates for the incorporation of the *marked* limitations Drs. Saleem and Ryser identified in those respects, the incorporation of which would moot Plaintiff's argument concerning the moderate limitations identified by the ALJ. This issue is appropriately left to be reconsidered on remand.

### VI. Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to hold a new hearing and issue a new decision. The ALJ should reconsider the opinions of Drs. Saleem and Ryser as to marked limitations in the identified functional domains and reach a reasoned conclusion consistent with the above findings.

Finally, Plaintiff does not support her request for an award of benefits, nor does Plaintiff address the conditions for such an award. Likewise, there is no basis to find that those conditions have been met here. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (An immediate

award of benefits is warranted if: 1- the ALJ failed to provide legally sufficient reasons for rejecting evidence; 2- there are no issues to resolve before a disability determination can be made; and 3- it is clear from the record that the ALJ would be required to find claimant disabled if the evidence is credited); *Treichler*, 775 F.3d at 1099 (if a court does not affirm the agency's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII. Recommendations

For the reasons stated above, the recommendation is that:

1. Plaintiff's motion for summary judgment (Doc. 10) be **GRANTED.**

2. Defendant's cross-motion (Doc. 13) be **DENIED.**

3. The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.

4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff Sarah Ann Elizabeth Ayala and against Defendant Commissioner of Social Security.

### VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations." The failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 13, 2024**         **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE