UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ANN ELIZABETH AYALA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security[1],<br><br>　　　　Defendant. | Case No.: 1:23-cv-0001 JLT GSA<br><br>ORDER DECLINING THE FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND, AND REMANDING THE MATTER PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT<br><br>(Docs. 10, 11, 13, 16) |

Sarah Ann Elizabeth Ayala seeks judicial review of a final decision denying her application for supplemental security income under Title XVI of the Social Security Act. (Docs. 1, 11.) Plaintiff asserts the ALJ erred in evaluating the medical opinion evidence, did not identify legally sufficient reasons to discount her subjective statements, and relied upon a flawed question to the vocational expert. (Doc. 11.) The Commissioner asserts the ALJ's analysis was proper, and substantial evidence supports the ALJ's findings. (Doc. 13.) For the reasons set forth below, Plaintiff's appeal is **GRANTED**, and the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this suit.

1

**I.    Decision of the ALJ**

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. (Doc. 9-1 at 33-51.) First, the ALJ determined Plaintiff did not engage in substantial gainful activity since the application date of August 7, 2018. (*Id.* at 34.) At step two, the ALJ determined that Plaintiff had the following medically determinable impairments: "rheumatoid arthritis; right shoulder osteoarthritis; sick sinus syndrome; depressive disorder, posttraumatic stress disorder, polysubstance abuse in reported remission; and personality disorder with borderline traits." (*Id.* at 35.) At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 36-38.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for six hours in an eight-hour workday. She has no limitations on sitting during an eight-hour workday. The claimant can occasionally reach overhead, and she can frequently handle or finger. She is capable of detailed tasks in a low stress work environment with as few workplace changes as possible. She is limited to occasional interaction with the public, supervisors, and co-workers. The claimant cannot perform tandem or teamwork.

(*Id.* at 38.) With the identified RFC, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work." (*Id.* at 49.) However, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 50.) In so finding, the ALJ relied upon the testimony of a vocational expert, who testified that Plaintiff could perform work such as photocopy machine operator, advertising material distributor, and collator operator. (*Id.* at 50-51.) Therefore, the ALJ concluded at step five that Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 51.)

**II.   Issues Raised by Plaintiff**

Plaintiff asserts the matter should be remanded either for payment of benefits or further proceedings, asserting: (1) the ALJ failed to properly evaluate the medical opinions of treating psychiatrist Dr. Saleem and examining psychologist Dr. Ryser, and erred in finding the opinions of non-examining physicians were persuasive; (2) the ALJ erred in evaluating Plaintiff's testimony; and (3) the ALJ relied on a flawed hypothetical question to the vocational expert, because the ALJ omitted

2

any reference of Plaintiff's moderate limitation in concentration, persistence, or pace. (*See generally* Doc. 11 at 14-30.) Plaintiff contends these errors warrant a remand for an award of benefits or, in the alternative, remand "for a new hearing and decision." (*Id.* at 30.)

### III.    Findings and Recommendations

The magistrate judge found the ALJ erred in evaluating the medical opinions challenged by Plaintiff, which relate to her mental impairments. (Doc. 16 at 4-12.) First, the magistrate judge considered the opinion of Dr. Saleem, who provided two opinions in December 2018 and January 2020. (*Id.* at 4.) The magistrate judge observed that the ALJ found the opinions were "in theory, supported by the provider's treatment records" but also found the "mental examination findings remained exactly the same throughout all the years of treatment, which is not consistent with the subjective descriptions of waxing and waning symptoms." (*Id.* at 5-6 [emphasis, citations omitted].) The magistrate judge opined the consistency points to "a[] factor in favor of his opinions," noting that "consistency is the second of the most important factors" to evaluate a medical opinion. (*Id.* at 6 [emphasis omitted].) The magistrate judge also determined the ALJ erred in finding the treatment notes were not consistent with the opinions regarding Plaintiff's immediate memory. (*Id.* at 7.) Finally, the magistrate judge found the ALJ did not properly reject the limitations Dr. Saleem identified related the functional domain of "adaptation." (*Id.* at 8.) Therefore, the magistrate judge concluded that "the ALJ's reasons for discounting Dr. Saleem's opinions are deficient." (*Id.*)

Next, the magistrate judge found the ALJ erred in addressing of the opinion of Dr. Ryser, who examined Plaintiff in June 2021. (Doc. 16 at 8.) The magistrate judge observed that the ALJ found the opinion was "not consistent with the overall evidence of record," and cited several exhibits as examples. (*Id.* at 9 [citations omitted].) However, the magistrate judge opined that "the ALJ did not present a comprehensive view of the cited records, but instead focused only on the normal findings therein." (*Id.*) The magistrate judge also observed that "Plaintiff identifies counterexamples to many of the findings of the ALJ noted." (*Id.*) The magistrate judge indicated the ALJ erred in finding the opinion from Dr. Ryser "appeared to be based primarily on the claimant's reported symptoms rather than objective findings," opining "[t]he fact that "Dr. Ryser explained Plaintiff's reported symptoms in detail as a part of her 9-page single-spaced narrative report, does not mean her

3

opinion was primarily based on those symptoms." (*Id.* at 10.) Thus, the magistrate judge concluded the reasoning for discounting Dr. Ryser's opinions were also deficient. (*Id.*)

Turning to the opinion evidence from Dr. Torrez, who performed a consultative examination, the magistrate judge found the ALJ erred in finding the opinion was persuasive. (Doc. 16 at 10.) The magistrate judge found it significant that Dr. Torrez's opinion in November 2018 was nearly 3 years prior to the ALJ's final decision in October 2021," while Drs. Saleem and Ryser issued opinions in January 2020 and June 2021. (*Id.*) The magistrate judge opined Drs. Saleem and Ryser could "therefore better approximate Plaintiff's functionality at the time the ALJ issued the decision, in additionally throughout the relevant period." (*Id.* at 10-11.) For the same reason, the magistrate judge found the ALJ erred in finding the opinions of non-examining physicians, Drs. Patterson and Murillo, were persuasive. (*Id.* at 11.). The magistrate judge acknowledged that "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." (*Id.*, [citation, emphasis omitted].) However, the magistrate judge believed "the gap in time here was unusually long, and the relative percentage of records the ALJ independently reviewed was quite high." (*Id.*) Therefore, the magistrate judge concluded the ALJ erred in evaluating the medical opinions related to Plaintiff's mental impairments. (*Id.* at 11-12.)

Finally, the magistrate judge acknowledged that Plaintiff also challenged the ALJ's rejection of her subjective complaints and the hypothetical question posed to the vocational expert. (Doc. 16 at 12.) The magistrate judge found: "Drs. Saleem and Ryser covered her subjective symptoms, objective findings, and functional limitations with much more clarity and detail than Plaintiff did. Thus, additional discussion here of Plaintiff's subjective symptoms is not necessary given that Plaintiff's statements made at the previous hearing and new hearing [are] subject to reconsideration just as are the opinions of Drs. Saleem and Ryser." (*Id.*) Similarly, the magistrate judge found the issue related to the vocational expert was "appropriately left to be reconsidered on remand" because "Plaintiff chiefly advocates for the incorporation of the marked limitations Drs. Saleem and Ryser identified," which the ALJ rejected. (*Id.* [emphasis omitted].)

Accordingly, the magistrate judge concluded that "[s]ubstantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled." (Doc. 16 at 12.)

## IV. The Commissioner's Objections

The Commissioner argues that the magistrate judge erred in evaluating the medical opinions. (Doc. 17 at 3-9.) The Commissioner contends the magistrate judge's "criticisms of the ALJ's reasoning are, generally speaking, essentially disagreements with the ALJ's reasonable interpretation of the evidence." (*Id.* at 3.) However, the Commissioner notes: "That it may be possible to interpret the evidence differently than the ALJ is not sufficient to constitute reversible error under the applicable substantial evidence standard." (*Id.*)

The Commissioner contends, "that the ALJ apparently acknowledged that Dr. Saleem's notes provided some support for her opinions is not problematic." (Doc. 17 at 4.) The Commissioner argues, "it was the ALJ's prerogative to weigh the evidence of record, and the ALJ simply found that whatever support Dr. Saleem's notes provided was outweighed by other, more significant, considerations." (*Id.*) The Commissioner asserts the ALJ properly considered the supportability and consistency of the opinion of Dr. Saleem, including considering the treatment notes from Dr. Saleem and "Plaintiff's reported daily activities." (*Id.* at 5-6.)

Next, the Commissioner objects to the findings related to the opinion of Dr. Ryser, reiterating that the magistrate judge's reasoning was "effectively a disagreement with how the ALJ interpreted the evidence of record." (Doc. 17 at 7.) The Commissioner argues the ALJ did not cherry-pick evidence, and "did not proceed under the impression that the mental status findings were entirely normal." (*Id.*) For example, the Commissioner observes the ALJ "acknowledged difficulties with memory and concentration," as well as Plaintiff's "pressured speech with circumstantial thought process." (*Id.*) Further, the Commissioner argues the ALJ's conclusion that Dr. Ryser's opinion was based on Plaintiff's self-reported symptoms rather than objective findings "was appropriate," because the ALJ indicated the limitations identified by Dr. Ryser were "out of proportion to the examiner's objective medical findings." (*Id.* at 8, citing *Prine v. Comm'r of Soc. Sec.*, 2022 WL 4123978, at *4 (E.D. Cal. Sept. 9, 2022).)

The Commissioner contends the magistrate judge also erred in considering the "gap in time between the assessments issued by Drs. Torrez, Patterson, and Murillo." (Doc. 17 at 9 [internal citations, quotation marks omitted].) The Commissioner contends the RFC determination "is to be

based on the evidence as a whole," and the gap identified by the magistrate judge "did not undermine the ALJ's conclusions." (*Id.*) The Commissioner argues that the ALJ "reasonably evaluate[d] the evidence as a whole and [found] the assessments of Drs. Torrez, Patterson, and Murillo more persuasive." (*Id.*)

Plaintiff filed a response to the objections, arguing that the magistrate judge's findings should be affirmed. (*See generally* Doc. 18.) Plaintiff maintains the ALJ erred in evaluating the medical opinions, and asserts "the Court should overrule Defendant's objections, adopt the Magistrate Judge's F&R, and remand this case for further administrative proceedings." (*Id.* at 5.)

**V.     Discussion and Analysis**

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A *de novo* review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

**A.     Evaluation of medical opinions**

The regulations direct ALJs to determine how persuasive a medical opinion is according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors showing the medical source's "familiarity with … other evidence in the record or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5), §§ 416.920c(c)(1)-(5). An ALJ is only required to discuss supportability and consistency, which are the two most important factors "when evaluating the persuasiveness of medical opinions." *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the [remaining] factors in paragraphs (c)(3) through (c)(5) of this section…").

The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791-

792 (internal quotation marks omitted).  The regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  On the other hand, consistency compares an opinion with other evidence in the record to determine its persuasiveness.  *See Woods*, 32 F.4th at 792.  With the consistency factor, the regulations explain: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).  The Ninth Circuit observed that an ALJ must explain how both the supportability and consistency factors were considered, and "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

         1.     Opinion of Dr. Saleem

The ALJ observed that Dr. Saleem, a treating physician, provided two opinions regarding Plaintiff's mental limitations abilities.  (Doc. 9-1 at 47.)  The ALJ summarized the opinions, stating:

> The doctor initially reported that the claimant had sleep difficulties and that she was isolated, withdrawn, and depressed with difficulty focusing and concentration (Exhibit B25F/5). He further opined that the claimant had marked to moderate limitations in understanding and memory. She had moderate limitations in carrying out simple instructions, but she had marked limitations in all other areas of concentration and persistence. The claimant had moderated limitations in asking simple questions and moderate to marked limitations in interacting appropriately with the public, but otherwise she had marked limitations in social interactions. He further opined that the claimant had moderate to marked limitations in traveling to unfamiliar places or using public transportation, but she had marked limitations in all other areas of adaptation. The claimant would likely be absent from work more than three times per month (Exhibit B25F/6). Over a year later, the doctor provided generally the same functional evaluation (Exhibit B22F/6).

(*Id.*)  The ALJ found the opinions of Dr. Saleem were not persuasive.  (*Id.* at 48.)

         a.     *Supportability*

The ALJ found "[t]he treatment notes are not consistent with the opinions."  (Doc. 9-1 at 47.)  For example, the ALJ observed that "the doctor opined that the claimant had symptoms of poor

7

1   immediate memory, but Dr. Saleem's treatment notes do not indicate any problems with immediate
2   memory." (*Id.*, citing Exhs. B20F/32, B22F/4; B25F/4; B42F/3, 12, 26.)  The magistrate judge found
3   the ALJ erred with this finding, because Dr. Saleem's examination notes indicated Plaintiff had
4   "memory problems, seemingly *recent* and remote." (Doc. 16 at 7 [emphasis added].)  In support of this
5   conclusion, the magistrate judge cited treatment notes indicating Plaintiff had a poor recent and remote
6   memory.  (*Id.*)  Towards this end, it appears the magistrate judge equated "recent" memory with
7   "immediate" memory.  However, immediate memory and recent memory are not synonymous, and
8   describe distinct memory types.  Indeed, the three separate memory types are identified on the
9   assessment completed by Dr. Saleem.  (*See*, *e.g.*, Doc. 9-1 at 1490.)  Consequently, the magistrate
10  judge erred in this analysis.

11          The inconsistency identified by the ALJ between Dr. Saleem's opinion and the treatment
12  records from Dr. Saleem regarding Plaintiff's *immediate* memory was a proper consideration to
13  evaluate supportability.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability considers
14  the medical evidence and supporting explanations presented by the medical source who offered the
15  opinion); *see also Rivera-Rosado v. Comm'r of Soc. Sec.*, 2025 U.S. Dist. LEXIS 178349, at *7 (S.D.
16  Fl. Sept. 10, 2025) ("the supportability factor focuses on a comparison to the medical source's own
17  records, while the consistency factor focuses on a comparison to other medical and non-medical
18  sources and records"); *see also De la Torre v. O'Malley*, 2024 WL 870828, at *5 (E.D. Cal. Feb. 28,
19  2024) ("Dr. Truta's own records speak to the *supportability* of Dr. Truta's opinion, not the consistency
20  of that opinion with other evidence in the record" [emphasis added]).  As the ALJ indicated, the cited
21  treatment records from Dr. Saleem indicate Plaintiff had the ability to perform immediate recall.  (*See,*
22  *e.g.*, Exhs. B20F/32, B42F/3, 12, 26 [Doc. 9-1 at 1477, 2118, 2127, 2141].)  Thus, the Court finds the
23  ALJ appropriately addressed the supportability factor.

24                            b.       Consistency

25          The ALJ identified inconsistencies between Dr. Saleem's opinion and other evidence in the
26  record. (Doc. 9-1 at 47-48.)  The ALJ observed that the mental examination findings were "exactly the
27  same throughout all the years of treatment," which was "not consistent with the subjective descriptions
28  of waxing and waning symptoms" from Plaintiff.  (*Id.* at 47, citation omitted.)  For example, the ALJ

observed that Plaintiff "at times… denied any memory loss and displayed a normal memory." (*Id.* at 43, citations omitted.) The ALJ also determined, "Dr. Saleem's opinion that the claimant had marked limitations in adaptation are not consistent with the claimant's own testimony that she could do chores, take walks, and care for her pets." (*Id.* at 47-48.)

Plaintiff asserts that the ALJ "erred to the extent she rejected the opinions from [Dr.] Saleem… because [she] can perform some activities of daily living." (Doc. 11 at 22.) The magistrate judge agreed, finding the ALJ's explanation was "somewhat in tension with the nature of the functional domain of 'adaptation' and the work functions under that domain." (Doc. 16 at 8.) The magistrate judge observed that Dr. Saleem identified marked limitations with adaptation, including the ability to respond to workplace changes, being aware of hazards and taking precautions, setting goals, and making plans. (*Id.*) The magistrate judge postulated that "chores, walks and caring for pets are relatively mundane repetitive activities that would rarely require adaptation to a changing work environment or awareness of hazards." (*Id.*) However, the magistrate judge fails to acknowledge the entirely of the factors considered under the "adaptation" domain.

As the ALJ observed, "adaptation" involves "adapting or managing oneself." (*See* Doc. 9-1 at 37.) Specifically, this functional domain "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *See Yeomans v. Colvin*, 2025 WL 83316, at *7 (E.D. Cal. Jan. 9, 2025) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.3). In finding Plaintiff had mild limitations with adaptation, the ALJ noted that Plaintiff reported she could "cook, clean, do laundry, do yard work, and go to the store;" and her mother reported that Plaintiff could drive on her own. (*Id.* at 38.) The ability to perform such tasks as those identified by the ALJ—both at step two and in evaluating the medical opinion of Dr. Saleem— is proper to evaluate adaptation.[2] *See, e.g.*, *Whiteley v. Comm'r of Soc. Sec.*, 2024 WL 3362415, at *6 (N.D. Oh. June 17, 2024) (the claimant's ability to drive, cook, clean, wash dishes, do laundry, and care for pets were proper considerations related to the

---

[2] Significantly, Plaintiff did not challenge ALJ's Paragraph B findings of "mild limitation" with adaptation at step two. (*See generally* Doc. 11.) The Court declines to manufacture such an argument on behalf of Plaintiff. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (stating a reviewing court ordinarily will not consider an issue that a claimant fails to argue "with any specificity" in the opening brief); *Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim …").

9

claimant's "degree of adaptation and self-management skills"); *Brandt v. Saul*, 2022 WL 79850, at *10 (E.D. Wisc. Jan. 7, 2020) (a claimant's abilities that included self-care, caring for a dog, performing household chores, and shopping "suggested better adaptation and management skills than [the treatment provider] asserted").

The ALJ carried the burden to consider the consistency of Dr. Saleem's opinion with other evidence in the record and identify the relevant evidence to support her findings, including Plaintiff's "waxing and waning symptoms" and reported activities. *See Chavez v. Dudek*, 2025 WL 999099, at *1 (9th Cir. Apr. 3, 2025) (finding an ALJ's consideration of the claimant's "waxing and waning symptoms" was proper in explaining the persuasiveness of the medical opinion); *Tiamiya v. Comm'r of Soc. Sec.*, 2025 WL 2193021, at 5* (E.D. Cal. Aug. 1, 2025) (a claimant's "activities are objective indicators of functioning, and the governing regulations plainly permit their consideration when evaluating the consistency of a medical opinion with other evidence"); *see also Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020) (indicating a claimant's activity level is a specific and legitimate reason for rejecting a medical opinion).

### 2. Opinion of Dr. Ryser

Dr. Ryser authored a medical opinion regarding Plaintiff's mental impairments following an examination in June 2021. (*See* Doc. 9-1 at 46-47.) The ALJ summarized the opinion as follows:

> [Dr. Ryser] stated that the claimant reported multiple symptoms with the most frequent symptoms including low mood, intermittent irritability, intrusive thoughts, flashbacks, nightmares, intense anxiety episodes, limited attention and concentration, and limited memory (Exhibit B53F/2, 3). Dr. Ryser opined that as early as March 2018 the claimant had marked limitations in understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration, performing activities without a schedule, working in coordination with others, completing a workday, and performing at a consistent pace. The claimant had marked limitation in accepting instruction and responding appropriately to criticism from supervisors. She had marked limitations in responding appropriately to workplace changes and traveling to unfamiliar places or using public transportation. The doctor opined further that the claimant had moderate to marked limitations in remembering locations and work-like procedures, sustaining ordinary routine, interacting appropriately with the public, asking simple questions or requesting assistance, get along with coworkers, maintaining socially appropriate behavior, and making plans independently. The claimant had moderate limitations in understanding, remembering, and carrying out one-to-two step instructions, making simple work-related decisions, adhering to basic standards of neatness, being aware of hazards, and

10

<blockquote>setting realistic goals. The claimant would likely be absent from work more than three times per month (Exhibit B53F).</blockquote>

(*Id.*) The ALJ stated that she did "not find this opinion persuasive." (*Id.* at 47.)

The ALJ acknowledged Dr. Ryser's opinion was "supported by explanation based on an approximately … one-hour interview." (Doc. 9-1 at 47.) However, the ALJ opined the opinion was not consistent with Dr. Ryser's examination findings, including Plaintiff's speech, thought content, intelligence, insight, judgment, fund of knowledge, and memory. (*Id.*, citing Exh. B52F [the psychological evaluation report from Dr. Ryser].) Specifically, the ALJ noted that Dr. Ryser found Plaintiff "had coherent thought process, appropriate thought content, no response to internal stimuli, oriented, and a good fund of knowledge." (*Id.* at 44, citing Exh. B52F/7, 8 [Doc. 9-1 at 2425, 2426].) With these findings, the ALJ adequately addressed the supportability factor. *See, e.g., Danny N. v. Dudek*, 2025 U.S. Dist. LEXIS 30763, at *10-11 (C.D. Cal. Feb. 19, 2025) (finding an ALJ properly addressed supportability where the ALJ identified the physician's own findings from a consultative psychological examination that did not support the extent of the limitations identified).

The ALJ also found the limitations Dr. Ryser identified were "out-of-proportion to the overall evidence of record." (Doc. 9-1 at 47.) The ALJ stated, "For example, it is not consistent with the claimant's mental status examination findings that indicated that she demonstrated dressed appropriately with normal speech, oriented, unremarkable thought content, average intelligence, fair insight and judgment, normal fund of knowledge, and normal memory." (*Id.*, citing Exhs. B47F/9; B49F/4; B50F/7 [Doc. 9-1 at 2323, 2345, 2382].) By identifying specific objective findings in the record, the ALJ sufficiently addressed the consistency factor.[3] *See, e.g., Ferreira v. Kijakazi*, 2023 WL 2815735, at *4 (E.D. Cal. Apr. 5, 2023) (a finding that "opined limitations were not consistent with the treatment record … expressly invokes the consistency factor").

///

---

[3] The ALJ also acknowledged that Plaintiff had "waxing and waning symptoms" and abnormal findings, such as difficulty spelling the word "world" backward and forward (though she did so "without errors" at the consultative examination), "circumstantial thought process," and difficulty with serial threes or serial sevens. (Doc. 9-1 at 37, 42-43.) The magistrate judge's finding that the ALJ "did not acknowledge" such abnormalities (Doc. 16 at 9) is not supported by the record.

11

### 3. Opinions of Dr. Torrez, Patterson, and Murillo

Evaluating the other medical opinions related to Plaintiff's mental impairments, the ALJ determined the opinion of Dr. Torrez, who performed a psychological consultative examination in November 2018, was "persuasive." (Doc. 9-1 at 48.) Likewise, the ALJ found the opinions from Drs. Patterson and Murillo, who reviewed available medical records at the initial level of review and on reconsideration, were persuasive. (*Id.*)

Dr. Torrez performed a psychological consultative examination in November 2018.[4] (*See* Doc. 9-1 at 43.) The ALJ noted that Dr. Torrez diagnosed Plaintiff "with depressive disorder, personality disorder with borderline traits, posttraumatic stress disorder by history, and polysubstance abuse, in reported remission." (*Id.*) The ALJ noted that following the examination, Dr. Torrez opined:

> [T]he claimant was not limited in her ability to follow simple, complex, or detailed instruction. She was not limited in her ability to maintain adequate pace or persistence. She was mildly limited in her ability to maintain adequate attention and concentration, to adapt to changes in job routine, and to withstand the stress of a routine workday. She was also mildly limited in her ability to adapt to changes, hazards, or stressors in the workplace setting. The claimant was moderately limited in her ability to interact with co-workers, supervisors, and the public (Exhibit B8F/8, 9).

(*Id.* at 48.) The ALJ determined that Dr. Torrez's opinion was "supported by explanation based upon [her] interview of the claimant" and was "consistent with the overall evidence record." (*Id.*)

---

[4] Plaintiff observes that 20 C.F.R. §416.197 indicates: "we will give the examiner any necessary background information about your condition." (Doc. 11 at 23 [modifications adopted].) Plaintiff suggests the Agency erred by not providing any records to Dr. Torrez to review, and as a result the opinion of Dr. Torrez cannot be substantial evidence. (*Id.*, citing *Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008); *Brantley v. Comm'r of Soc. Sec.*, 637 Fed. Appx. 888, 894-897 (6th Cir. 2016). However, Plaintiff's reliance upon *Burgess* and *Brantley* appears misplaced because both cases address the *prior* regulations and do not address the method by which an ALJ evaluates medical evidence under the amended regulations that govern Plaintiff's application. Moreover, the Court is unaware of any governing Ninth Circuit authority directing a consultative examiner receive treatment records for review. To the contrary, courts in this Circuit have indicated consultative examiners are *not* required to review such records. *See, e.g., Raquel P. v. Kijakazi*, 2023 WL 8656915, at *9 (S.D. Cal. Dec. 14, 2023) (addressing an application under the amended regulations and explaining that consultative examiners "are not required to review medical records because a CE's opinion rests on their own examinations"); *see also Bozicevic v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5231669, at *5 (D. Ariz. Nov. 10, 2021) ("a consultative examiner's opinion can amount to substantial evidence… even when that consultative examiner reviewed no medical records"). Regardless, Dr. Torrez indicated that she reviewed a "psychiatric progress note" and "psychological evaluation" from another physician. (Doc. 9-1 at 891.) Thus, the record shows the Agency provided at least *some* background information to Dr. Torrez, and there is no showing that any additional information was "necessary" prior to the consultative examination.

1    Specifically, the ALJ observed that other evidence in the record showed "that even with sporadic
2    medication compliance, the claimant's mental status examination findings revealed that the claimant
3    was alert with linear thought process, normal thought content, normal fund of knowledge, immediate
4    recall, fair insight, and fair judgment." (*Id.*, citing Exhs. B5F/3, 9, 12, 17-27; B47F/9, 10 [Doc. 9-1 at
5    848, 854, 857, 862-72, 2323, 2324].) Thus, the ALJ properly invoked both the supportability and
6    consistency factors to find the opinion was "persuasive." *See, e.g., Serabian v. Comm'r of Soc. Sec.*,
7    2025 WL 776086, at *5 (E.D. Cal. Mar. 11, 2025) (the ALJ did not err finding a medical opinion was
8    persuasive where the ALJ found it was "supported by the overall record, as well as [the physician's]
9    examination report" from the psychiatric consultative examination).

10          The ALJ also found the opinions from Drs. Patterson and Murillo were persuasive, because the
11   physicians supported their opinions with "explanation[s] based upon a review of the available medical
12   evidence of record." (Doc. 9-1 at 48.) In addition, the ALJ found the opinions were "consistent with
13   the overall evidence of record." (*Id.*) The ALJ stated: "For example, the opinions are consistent with
14   mental status examination findings that revealed the claimant was depressed with some difficulty with
15   attention and memory, but she was alert with linear thought process, normal thought content, normal
16   fund of knowledge, immediate recall, fair insight, and fair judgment." (*Id.*, citing Exhs. B5F/3, 9, 12,
17   17-27; B47F/9 [Doc. 9-1 at 848, 854, 857, 862-72, 2323, 2324].) Consequently, the ALJ properly
18   addressed both the required supportability and consistency factors. *See Woods*, 32 F.4th at 791-92.

19          Though the magistrate judge questioned the ALJ's reliance on the opinions of Drs. Torrez,
20   Patterson, and Murillo in part due to the "gap" in time that occurred between the medical opinions and
21   the ALJ authoring a decision (Doc. 16 at 11-12), the medical opinions were each authored during the
22   adjudicated period. The ALJ carried the burden to explain why she found certain opinions were
23   persuasive and others were not, by considering the supportability and consistency of each of the
24   identified medical opinion. Because the opinion of Dr. Torrez was based upon her own testing and
25   independent examination, it is substantial evidence in support of the ALJ's decision. *See Tonapetyan*
26   *v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (observing that a medical opinion from a consultative
27   examiner that rests on the physician's "own independent examination" constitutes substantial
28   evidence). Similarly, the opinions of Drs. Patterson and Murillo are substantial evidence, because they

are consistent with the opinion of Dr. Torrez and the medical record. *Tonapetyan*, 242 F.3d at 1149; *see also Ahearn v. Colvin*, 2024 WL 5040995, at *2 (9th Cir. Dec. 9, 2024) (addressing the amended regulations and finding an ALJ "did not err by relying on findings from non-examining state agency psychologists" where the ALJ found the found opinions were "consistent with other evidence in the record") (unpublished).

### 4. Conclusion

For the reasons set forth above, the Court declines to adopt the findings of the magistrate judge related to the ALJ's analysis of the medical opinions concerning Plaintiff's mental impairments. Though Plaintiff advocates for a different interpretation of the record—and directs the Court to other medical findings regarding the severity of her symptoms—the ALJ's interpretation of the evidence was rational because the medical evidence indisputably includes normal findings. It is not the role of this Court to reweigh the evidence. *See Wilfred-Picket v. Berryhill*, 719 Fed. Appx. 576, 578 (9th Cir. 2017). As the Ninth Circuit explained, "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Therefore, the Court upholds the ALJ's rational conclusions related to the medical opinions in the record.

## B. Plaintiff's subjective statements[5]

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036. An ALJ may consider many factors to assess a claimant's statements, including, for example: (1) the objective medical evidence, (2) the claimant's reputation for

---

[5] The magistrate judge found a separate discussion regarding Plaintiff's subjective symptoms was "not necessary" following the findings related to the medical opinion evidence and the related determination that remand was appropriate on that issue. (Doc. 16 at 12.) Because the Court declines those findings, it now addresses the parties' arguments related to Plaintiff's subjective statements, as raised in Plaintiff's motion for summary judgment and the Commissioner's responsive brief. (Doc. 11 at 26-28, Doc. 13 at 22-25.)

1  truthfulness, (3) inconsistencies in testimony or between testimony and conduct, (4) the claimant's
2  daily activities, (5) an unexplained, or inadequately explained, failure to seek treatment or follow a
3  prescribed course of treatment, and (6) testimony from physicians about the nature, severity, and effect
4  of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also*
5  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).
6     The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected
7  to cause the alleged symptoms," and did not identify evidence of malingering.  (Doc. 9-1 at 40.)
8  Therefore, the ALJ was required to identify clear and convincing reasons for rejecting Plaintiff's
9  testimony.  The ALJ opined Plaintiff's "statements concerning the intensity, persistence and limiting
10 effects of these symptoms are not entirely consistent with the medical evidence and other evidence in
11 the record…". (*Id.*)  In addressing Plaintiff's subjective statements concerning her mental
12 impairments, the ALJ opined the statements were "not consistent with the claimant's medical evidence
13 of record, which documents improvement with treatment and mental status examination findings…".
14 (Doc. 9-1 at 42; *see also id.* at 42-44.)  The parties dispute whether the reasons identified by the
15 ALJ—namely, improvement with treatment and the objective medical evidence— are "clear and
16 convincing" reasons to reject the subjective statements.  (Doc. 11 at 27-28; Doc. 13 at 22-25.)
17      1. Improvement with treatment
18    When evaluating a claimant's subjective statements, the ALJ may consider "the type, dosage,
19 effectiveness, and side effects of any medication."  20 C.F.R. §§ 404.1529(c), 416.929(c).  However, it
20 is insufficient for an ALJ simply to state that a claimant showed improvement with treatment.  Rather,
21 an ALJ must cite evidence to support such a conclusion. *Compare Sandra V. v. O'Malley*, 2024 U.S.
22 Dist. LEXIS 148168, at *13 (C.D. Cal. Aug. 19, 2024) (finding the ALJ properly relied on
23 improvement with treatment "because the ALJ cited numerous medical records indicating Plaintiff's
24 symptoms improved") *with Hernandez v. Kijakazi*, 2023 WL 8948405, at *5 (E.D. Cal Dec. 28, 2023)
25 (finding the ALJ erred in relying on improvement as a reason because the ALJ failed to "cite to
26 evidence in the record observing specific improvement in Plaintiff's symptoms due to medication").
27    The ALJ stated only that Plaintiff "acknowledged some improvement in her symptoms with a
28 decrease in night terrors in 2018."  (Doc. 9-1 at 43, citing Exh. B5F/8 [Doc. 9-1 at 853].)  Importantly,

15

1   the ALJ cited only a single treatment note to support this conclusion. The Court is unable to find the
2   cited treatment note supports a conclusion that Plaintiff showed "sustained improvement" with her
3   symptoms, which were not limited to "night terrors." *See*, *e.g.*, *Attmore v. Colvin*, 827 F.3d 872, 877-
4   79 (9th Cir. 2016) (finding the ALJ erred in relying upon "isolated signs of improvement" because the
5   ALJ did not identify evidence of "*sustained* improvement") (emphasis in original). Indeed, the ALJ
6   also acknowledged that Plaintiff "testified that *even with medication*, she would have anger outbursts
7   and panic attacks weekly." (*Id.* at 40 [emphasis added].)

8         The Court is unable to find "improvement with treatment" is a clear and convincing reason to
9   support the rejection of Plaintiff's subjective statements. *See*, *e.g.*, *Attmor*, 827 F.3d at 877-79;
10  *Hernandez v. Kijakazi*, 2023 WL 8948405, at *5 (E.D. Cal Dec. 28, 2023) (finding the ALJ erred in
11  relying on improvement as a reason because the ALJ failed to "cite to evidence in the record observing
12  specific improvement in Plaintiff's symptoms due to medication"); *Diana L. v. Comm'r of Soc. Sec.*,
13  2023 WL 4840047, at *4 (W.D. Wash. July 28, 2023) (finding error where the ALJ did not cite
14  evidence to show the "[p]laintiff improved to a degree that is inconsistent with her hearing testimony").

15        2.      Objective medical evidence

16        Consistency with the objective medical evidence was the sole remaining factor considered by
17  the ALJ to address Plaintiff's subjective statements concerning the severity of her symptoms caused by
18  mental impairments. (*See* Doc. 9-1 at 42; *id* at 42-44.) In general, "conflicts between a [claimant's]
19  testimony of subjective complaints and the objective medical evidence in the record" can constitute
20  specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of Social Sec.
21  Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, a claimant's subjective statements concerning the
22  severity of her symptoms "cannot be rejected on the sole ground that it is not fully corroborated by
23  objective medical evidence ...." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also*
24  *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting
25  pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). For this reason, the
26  ALJ's analysis is insufficient.

27        Moreover, even if the objective medical evidence was not the only remaining reason to
28  discount Plaintiff's testimony, it would not constitute a "clear and convincing" reason. Although the

1  ALJ concluded Plaintiff's testimony was "not entirely consistent with the medical evidence" the ALJ
2  did not identify the specific testimony she believed to be inconsistent, or support the conclusions with
3  citations to the record. (Doc. 9-1 at 40.) Unless the ALJ links a claimant's testimony to "the
4  observations an ALJ makes as part of the summary of the medical record," the summary is insufficient
5  to reject a claimant's statements. *Argueta v. Colvin*, 2016 WL 4138577 (E.D. Cal. Aug. 3, 2016),
6  citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). In addition, the district court may
7  not review the summarized record to identify inconsistencies. For example, in *Brown-Hunter*, the
8  claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom
9  testimony. *Id.*, 806 F.3d at 491. The district court identified inconsistencies in the ALJ's summary of
10 the medical record that it opined gave rise to reasonable inferences about the plaintiff's credibility. *Id.*
11 On appeal, the Ninth Circuit determined the ALJ failed to identify the specific testimony she found not
12 credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493.
13 The Court explained that even if the district court's analysis was sound, the analysis could not cure the
14 ALJ's failure. *Id.* at 494.

15 The Ninth Circuit also determined an ALJ erred when discrediting symptom testimony as "not
16 entirely consistent with the medical evidence," without linking testimony and medical evidence in
17 *Holcomb v. Saul*, 832 Fed. Appx. 505 (9th Cir. Dec. 28, 2020). In *Holcomb*, the ALJ summarized the
18 claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the
19 medical evidence and other evidence in the record.'" *Id.* at 506. The Court found that "the ALJ
20 discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific
21 medical records and explain why those medical records contradicted his symptom testimony." *Id.* The
22 Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the
23 relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasons identified
24 by the ALJ for discounting testimony, the "failure to specific the reasons for discrediting Holcomb's
25 symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

26 Likewise, here, the ALJ summarized the medical record but did not link Plaintiff's hearing
27 testimony to the summary or otherwise identify what statements from Plaintiff conflicted with the
28 summary. The Court is unable to cure this error. *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 832

Fed. App'x. at 506; *see also Marie A.G. v. Kijakazi*, 2023 U.S. Dist. LEXIS 74607, at *11 (C.D. Cal. Apr. 28, 2023) ("In the absence of links between the ALJ's findings and Plaintiff's testimony, the Court may not infer that the ALJ's summary of the treatment record contained actual reasons for discounting Plaintiff's testimony and review them as such").

### 3. Failure to identify discounted testimony

Finally, the ALJ must identify the subjective statements that are not credible. *Burch*, 400 F.3d at 680. "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints").

Although the ALJ summarized Plaintiff's testimony, the ALJ did not identify which subjective statements the ALJ believed were credible, or which statements the ALJ rejected. Consequently, the ALJ's analysis was deficient. *See Greger*, 464 F.3d at 972; *Sanders v. Comm'r of Soc. Sec.*, 2024 WL 1641035, at *2 (E.D. Cal. Apr. 15, 2024) (observing that "summarizing [a] plaintiff's testimony is not equivalent to identifying specific statements").

### 4. Conclusion

The Ninth Circuit observed, "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Thus, an ALJ must identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ failed to carry this burden here, and the Court is unable to conclude substantial evidence supports the ALJ's decision.

### C. Vocational expert testimony

Plaintiff asserts the ALJ also erred in relying upon the testimony of a vocational expert. (Doc. 11 at 28-29.) Plaintiff argues the hypothetical question posed by the ALJ "fails to describe any restrictions in [Plaintiff's] ability to concentrate over a period of time, maintain a particular work pace, or persist at tasks." (*Id.* at 29.) Importantly, a vocational expert must consider all of a claimant's restrictions, including any subjective complaints that are not properly rejected. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (hypothetical questions that do not include all of a claimant's limitations are insufficient); *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the residual functional capacity determination and the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace").

The error evaluating Plaintiff's subjective complaints impacted the residual functional capacity assessment by the ALJ and the correlating hypothetical questions posed to the vocational expert. *See Miranda v. Astrue*, 2009 WL 2905894, at *10 (C.D. Cal. Sept. 4, 2009) (observing the Court could not "assess the propriety of the hypothetical posed to the vocational expert" until the ALJ properly considers the plaintiff's subjective complaints) (emphasis omitted).

### D. Remand for further proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the residual functional capacity determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective

complaints…"). In addition, remand is appropriate for the vocational expert to consider hypothetical questions that encompass Plaintiff's subjective complaints, to the extent the ALJ does not find the limitations to which Plaintiff testified should be rejected. *See, e.g., Andrews,* 53 F.3d at 1039-40; *Miranda*, 2009 WL 2905894, at *10 (remand was appropriate for the ALJ to "properly reject the … plaintiff's subjective complaints … or [to] incorporate additional limitations into the hypothetical posed to the vocational expert). Thus, a remand for further proceedings is appropriate in this action.

## VI. Conclusion and Order

According to 28 U.S.C. § 636 (b)(1), this Court conducted a *de novo* review of the case. Having carefully reviewed the entire matter, the Court declines to adopt the findings of the magistrate judge related to the medical opinion evidence. However, the ALJ failed to apply the proper legal standards to evaluate Plaintiff's subjective complaints. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 16).
2. Plaintiff's motion for summary judgment or remand (Docs. 10, 11) is **GRANTED**.
3. The Commissioner's request to affirm (Doc. 13) is **DENIED**.
4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.
5. The Clerk of Court is directed to enter judgment in favor of Sarah Ann Elizabeth Ayala and against Defendant Frank Bisignano, Commissioner of Social Security, and to close this case.

IT IS SO ORDERED.

Dated: __September 17, 2025__                    /s/ Jennifer L. Thurston
                                                 UNITED STATES DISTRICT JUDGE

20